Filed 2/10/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JEFFREY ROBERT PETRI,<br><br>    Defendant and Appellant. | H045990<br>(Santa Clara County<br>Super. Ct. Nos. B1687703, C1646362) |

## I.  INTRODUCTION

In case No. B1687703, defendant Jeffrey Robert Petri pleaded no contest to grand theft (Pen. Code, §§ 484, 487, subd. (a))[1] and admitted that he had served one prior prison term (former § 667.5, subd. (b)).  In case No. C1646362, defendant pleaded no contest to embezzlement (§§ 504, 487) and also admitted that he had served one prior prison term (former § 667.5, subd. (b)).  At a combined sentencing hearing, the trial court sentenced defendant to four years in jail with 577 days of custody credits.  In each case, the court ordered defendant to pay a restitution fine of $300 (§ 1202.4, subd. (b)), a court operations assessment of $40 (§ 1465.8), and a court facilities assessment of $30 (Gov. Code, § 70373).  Upon motion by defendant, the court at a subsequent hearing, struck the prior prison term enhancement in case No. C1646362.

On appeal, defendant first contends that, based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), the trial court violated his due process rights under the

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

California and federal Constitutions because the court failed to find that he had the present ability to pay the amounts imposed. Second, defendant argues that the court erred in denying him additional presentence custody credits for time spent in custody in Ohio. Third, we understand defendant to contend that in case No. B1687703, the prior prison term enhancement (§ 667.5, subd. (b)) must be stricken because the enhancement no longer applies to him based on recent legislation.

For reasons that we will explain, we determine that defendant's due process rights were not violated by the trial court's failure to make an ability to pay finding, the issue of custody credits is moot, and the prior prison term enhancement in case No. B1687703 must be stricken. We also determine that clerical errors in the abstract of judgment must be corrected.

## II. BACKGROUND

On August 22, 2016, defendant was charged by complaint in case No. B1687703 with forgery (§ 476; count 1) and grand theft (§§ 484, 487, subd. (a); count 2). Defendant allegedly committed the offenses in January 2016. The complaint also alleged that defendant had served two prior prison terms (former § 667.5, subd. (b)).

On September 9, 2016, defendant was charged by complaint in case No. C1646362 with embezzlement (§§ 504, 487). Defendant allegedly committed the offense in mid-2016. The complaint also alleged that defendant had served five prior prison terms (former § 667.5, subd. (b)).

On December 1, 2017, in the first case (No. B1687703), defendant pleaded no contest to grand theft and admitted that he had served one prior prison term. In the second case (No. C1646362), defendant pleaded no contest to embezzlement and admitted that he had served one prior prison term. Defendant entered his pleas and admissions pursuant to a plea bargain in exchange for an agreed-upon sentence of four years concurrent in each case.

2

The combined sentencing hearing was held on May 17, 2018. Defendant contended that he was entitled to presentence custody credit for time spent in custody in Ohio because there was a "hold out of California" and the time was not credited toward a sentence in Ohio. The trial court denied defendant's request.

The trial court proceeded to deny probation in both cases and sentence defendant to four years in jail in the first case (No. B1687703) and a concurrent term of four years in jail in the second case (No. C1646362). (See § 1170, subd. (h).) The term in each case consisted of the upper term of three years and a consecutive term of one year for the prior prison term enhancement.

In both cases, defendant was granted 577 days of custody credits, consisting of 289 actual days and 288 days conduct credit. The calculation of actual days was based on the date of defendant's arrest in California through the date of sentencing.

The trial court also ordered defendant to pay in the first case (No. B1687703) a restitution fine of $300 (§ 1202.4, subd. (b)), a court operations assessment of $40 (§ 1465.8), a court facilities assessment of $30 (Gov. Code, § 70373), and victim restitution as determined by the court, including, but not limited to, $8,037.69 to Citi Security and Investigation Services. In the second case (No. C1646362), defendant was ordered to pay a restitution fine of $300, a court operations assessment of $40, a court facilities assessment of $30, and victim restitution as determined by the court, including, but not limited to, $9,019.19 to Pruneridge Touchstone Golf.[2] The remaining counts and allegations in both cases were dismissed.

Defendant subsequently filed a motion in the trial court again seeking presentence custody credits for time spent in custody in Ohio. He also contended that the trial court

---

[2] The felony abstract of judgment dated June 4, 2018, incorrectly states that Pruneridge Touchstone Golf was awarded only $4,049.19 in restitution. We will direct the trial court to prepare an amended abstract of judgment that accurately reflects the court's oral pronouncement.

incorrectly imposed an enhancement for the same prior prison term (former § 667.5, subd. (b)) in each case instead of imposing it only once for both cases. The trial court denied defendant's motion requesting additional custody credits, but it granted the motion regarding the prior prison term enhancements and struck the enhancement in the second case (No. C1646362).

### III. DISCUSSION

#### A. *Fines and Assessments*

At sentencing, prior to imposing any fines or fees, the trial court stated that the court "assume[s] that [defendant] doesn't have any ability to pay fines and fees based on an inability to pay." The court stated that it would not impose a $10 fine (§ 1202.5) or a booking fee (see Gov. Code, §§ 29550, 29550.1 and 29550.2) "based on inability to pay." Relevant to this appeal, the court ordered defendant to pay in each case a restitution fine of $300 (§ 1202.4, subd. (b)), a court operations assessment of $40 (§ 1465.8), and a court facilities assessment of $30 (Gov. Code, § 70373).

Defendant contends that, based on *Dueñas*, *supra*, 30 Cal.App.5th 1157, which was decided after he was sentenced, the imposition of the restitution fine, the court operations assessment, and the court facilities assessment violated his due process rights under the California and federal Constitutions because the trial court did not find that he had the present ability to pay. He argues that the assessments should be vacated, and that the restitution fine be stayed until the prosecutor can show that defendant has the present ability to pay. Defendant contends that his claim has not been forfeited because the trial court made a legal error at sentencing and because it would have been futile to object.

The Attorney General contends that defendant forfeited his claim by failing to object on due process grounds below and by failing to provide evidence of his inability to pay. The Attorney General also argues that *Dueñas* was wrongly decided as to restitution fines, and that the issue should be analyzed under the excessive fines clause of the Eighth Amendment to the federal Constitution where "ability to pay is not determinative." The

4

Attorney General "does not take issue with *Dueñas*" regarding *Dueñas*'s holding that court operations and court facilities assessments may not be imposed if a defendant demonstrates an inability to pay.

For reasons that we will explain, we determine that defendant fails to demonstrate error in the court's imposition of the fines and assessments. In reaching this conclusion, we decline to review defendant's restitution fine under the excessive fines clause of the Eighth Amendment as urged by the Attorney General. Defendant did not raise an Eighth Amendment challenge in his opening brief on appeal, and it does not appear from his cursory reference to the Eighth Amendment in his reply brief that he intends to make such a challenge. Further, to the extent the Attorney General believes the matter should be remanded for a hearing on defendant's ability to pay the court operations and court facilities assessments, we are not required to accept a concession by the Attorney General. (*People v. Kim* (2011) 193 Cal.App.4th 836, 847.)

### 1. Forfeiture

Defendant's sentencing hearing was held in 2018, which was prior to the January 2019 *Dueñas* decision. At sentencing, defendant did not object to the imposition of any fines, fees, or assessments. The Attorney General contends that defendant has forfeited his due process claim.

It appears, however, that the trial court *did* engage in an ability-to-pay determination as to the fines or fees that the court believed could not be statutorily imposed unless an ability-to-pay determination was made. As to those fines or fees, the court determined that defendant did *not* have the ability to pay and declined to impose them. As to the fines and assessments that the court did impose, the authorizing statutes precluded, or otherwise did not require, an ability to pay determination. (See §§ 1202.4, subd. (c) ["Inability to pay may be considered only in increasing the amount of the restitution fine in excess of the minimum fine"], 1465.8, subd. (a) [court operations

5

assessment of $40 "shall be imposed on every conviction"]; Gov. Code, § 70373, subd. (a)(1) [court facilities assessment of $30 "shall be imposed on every conviction"].)

The Courts of Appeal have reached different conclusions regarding whether a due process claim under *Dueñas* is forfeited if the defendant failed to object in the trial court to the imposition of the restitution fine, the court operations assessment, or the court facilities assessment. (See, e.g., *People v. Rodriguez* (2019) 40 Cal.App.5th 194, 197, 206 [*Dueñas* claim forfeited]; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1031-1034 (*Jones*) [due process objection based on *Dueñas* not forfeited]; *People v. Santos* (2019) 38 Cal.App.5th 923, 932 (*Santos*) [claim based on *Dueñas* not forfeited.)

" 'Reviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile or wholly unsupported by substantive law then in existence.' [Citation.] . . . In determining whether the objection would have been futile, 'we consider the "state of the law as it would have appeared to competent and knowledgeable counsel at the time of the trial." ' [Citations.]" (*Jones*, *supra*, 36 Cal.App.5th at p. 1031.) The forfeiture rule does not apply when " ' "the pertinent law later changed so unforeseeably that it is unreasonable to expect trial counsel to have anticipated the change." ' [Citation.]" (*Ibid.*)

Prior to *Dueñas*, the "controlling case law on point effectively foreclosed any objection that imposing the [minimum] $300 restitution fine without conducting an ability to pay hearing violated [a defendant's] due process rights." (*Jones*, *supra*, 36 Cal.App.5th at p. 1031.) Specifically, in *People v. Long* (1985) 164 Cal.App.3d 820 (*Long*), the appellate court rejected the defendant's argument that "imposition of the . . . restitution fine at the time of his sentencing without consideration of his ability to pay constituted a denial of due process." (*Id.* at p. 824, italics omitted [analyzing § 1202.4 and former Gov. Code, § 13967].) The fact that " 'some attorneys may have had the foresight to raise this issue [in *Dueñas*] does not mean that competent and knowledgeable counsel reasonably could have been expected to have anticipated' *Dueñas*. [Citation.]"

6

(*Jones*, *supra*, at p. 1033.)  In view of the existence of *Long*, and the fact that the statutes requiring imposition of a minimum restitution fine, the court operations assessment, and the court facilities assessment either preclude, or do not require, an ability-to-pay determination (§§ 1202.4, subd. (c), 1465.8, subd. (a); Gov. Code, § 70373, subd. (a)(1)), we will assume that defendant did not forfeit his due process claim under *Dueñas* regarding the $300 minimum restitution fine, the $40 court operations assessment, and the $30 court facilities assessment.  (See *Jones*, *supra*, 36 Cal.App.5th at pp. 1031-1034 [due process objection based on *Dueñas* not forfeited]; *Santos*, *supra*, 38 Cal.App.5th at p. 932 [claim based on *Dueñas* not forfeited.)

## 2.  *Dueñas*

In *Dueñas*, the defendant at sentencing requested a hearing to determine her ability to pay various amounts that were imposed by the trial court.  (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1162.)  At a subsequent ability-to-pay hearing the court reviewed the defendant's "uncontested declaration concerning her financial circumstances."  (*Id.*  at p. 1163.)  The court waived attorney's fees based on the defendant's indigence but rejected her constitutional claim that due process required the court to consider her ability to pay other fines and assessments, including a minimum restitution fine under section 1202.4, a $40 court operations assessment under section 1465.8, and a $30 court facilities assessment under Government Code section 70373.  (*Dueñas*, *supra*, at p. 1163; see *id.* at p. 1169.)

On appeal, the *Dueñas* court observed that the purpose of the $40 assessment under section 1465.8 is "[t]o assist in funding court operations" (§ 1465.8, subd. (a)(1)), and that the purpose of the $30 assessment under Government Code section 70373 is "[t]o ensure and maintain adequate funding for court facilities" (Gov. Code, § 70373, subd. (a)(1)).  Regarding such "fee-generating statutes" and their impact on indigent defendants, the *Dueñas* court stated that " '[c]riminal justice debt and associated collection practices can damage credit, interfere with a defendant's commitments, such as

7

child support obligations, restrict employment opportunities and otherwise impede reentry and rehabilitation. . . .' [¶] These additional, potentially devastating consequences suffered only by indigent persons in effect transform a funding mechanism for the courts into additional punishment for a criminal conviction for those unable to pay." (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1165, 1168.) Based primarily on a trio of cases—*Griffin v. Illinois* (1956) 351 U.S. 12 (*Griffin*), *In re Antazo* (1970) 3 Cal.3d 100 (*Antazo*), and *Bearden v. Georgia* (1983) 461 U.S. 660 (*Bearden*)—the *Dueñas* court concluded that imposition of the court operations assessment (§ 1465.8) and court facilities assessment (Gov. Code, § 70373) without a determination of the defendant's ability to pay was "fundamentally unfair" and violated due process under the federal and California Constitutions. (*Dueñas*, *supra*, at p. 1168.)

Regarding restitution fines, the *Dueñas* court further stated that a wealthy defendant who successfully completes probation would have an absolute right to have the charges against the defendant dropped under section 1203.4, subdivision (a)(1). (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1170, 1171.) An indigent probationer, on the other hand, who could not afford the mandatory restitution fine, would have to persuade the trial court that dismissal of the charges and relief from the penalties of the offense were in the interest of justice. (*Ibid.*, citing § 1203.4, subd. (a)(1).) The *Dueñas* court found that "[t]he statutory scheme thus results in a limitation of rights to those who are unable to pay," and that section 1202.4 is "not a substitute for due process." (*Dueñas*, *supra*, at p. 1171, fn. omitted.) The *Dueñas* court concluded that the execution of a restitution fine under section 1202.4 "must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Dueñas*, *supra*, at p. 1164.)

### 3. Analysis

The Courts of Appeal have reached conflicting conclusions regarding whether *Dueñas* was correctly decided, and the issue is currently before the California Supreme

8

Court. (See, e.g., *People v. Kopp* (2019) 38 Cal.App.5th 47, 95 [agreeing with *Dueñas* that due process requires an ability to pay determination before imposition of court operations or court facilities assessments], review granted Nov. 13, 2019, S257844; *Santos*, *supra*, 38 Cal.App.5th at pp. 926-927 [applying "the principles articulated [in *Dueñas*]"]; *People v. Caceres* (2019) 39 Cal.App.5th 917 (*Caceres*) ["the due process analysis in *Dueñas* does not support its broad holding"].) For the following reasons, we do not find *Dueñas* persuasive, and we determine that the trial court did not err in imposing the restitution fine, court facilities assessment, and court operations assessment without first determining defendant's ability to pay those amounts.

Dueñas* relied on "two distinct strands" of precedent to reach the holding that due process requires an ability-to-pay determination before a trial court may impose fines and assessments. (*People v. Hicks* (2019) 40 Cal.App.5th 320, 325, review granted Nov. 26, 2019, S258946 (*Hicks*).) "The first strand secures a . . . right of *access* to the courts." (*Ibid*; see, e.g., *Griffin*, *supra*, 351 U.S. at p. 19 (plur. opn. of Black, J.) [due process and equal protection clauses require that "[d]estitute defendants . . . be afforded as adequate appellate review as defendants who have money enough to buy transcripts"].) "The second strand . . . bar[s] . . . incarceration based on the failure to pay criminal penalties when that failure is due to a criminal defendant's indigence . . . ." (*Hicks*, *supra*, at p. 325; see, e.g., *Antazo*, *supra*, 3 Cal.3d 100, 103-104 [requiring a convicted indigent defendant to serve out a fine and penalty assessment in jail because the defendant is unable to pay violates the federal equal protection clause]; *Bearden*, *supra*, 461 U.S. at p. 661-662 [14th Amendment prohibits automatic revocation of probation for failure to pay a fine, in the absence of a determination that the probationer failed to make sufficient efforts to pay or that other forms of punishment were inadequate].)

As the appellate court in *Hicks* explained, "[t]he first strand does not dictate *Dueñas*'s bar on imposing fees because the imposition of assessments, fines and fees does not deny a criminal defendant access to the courts. [Citations.] . . . [¶] The second

9

strand also does not dictate *Dueñas*'s bar on imposing fees because their imposition, without more, does not result in incarceration for nonpayment due to indigence." (*Hicks*, *supra*, 40 Cal.App.5th at p. 326, review granted; accord, *Santos*, *supra*, 38 Cal.App.5th at pp. 937-939 (dis. opn. of Elia, J.).)

Moreover, regarding the *Dueñas* court's concern that indigent probationers' rights are limited, as compared to wealthy defendants who successfully complete probation and have a statutory right to have the charges against them dropped under section 1203.4, subdivision (a)(1) (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1170-1171), defendant in this case was denied probation and sentenced to jail. As a purportedly indigent defendant who has been sentenced to jail, defendant fails to identify a "limitation of rights" comparable to that identified in *Dueñas* concerning indigent and wealthy probationers. (*Dueñas*, *supra*, at p. 1171; see *Caceres*, *supra*, 39 Cal.App.5th at p. 926 & fn. 10 [explaining that *Dueñas*'s discussion of the disparity in treatment of wealthy and indigent probationers is not applicable to a defendant who is denied probation]; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1069 [stating that the due process analysis in *Dueñas* has been "incorrectly extended . . . to cases where a defendant is sentenced to prison and ordered to pay . . . amounts"].)

We therefore are not persuaded by defendant's reliance on *Dueñas* to support his contention that due process required an ability to pay finding by the trial court before imposition of the restitution fine, the court operations assessment, and the court facilities assessment. "Absent Dueñas, we are left to evaluate defendant's due process challenge under the two strands of precedent *Dueñas* cites. Neither strand bars the imposition of [$70] in assessments and the $300 restitution fine in [each of defendant's two cases]." (*Hicks*, *supra*, 40 Cal.App.5th at p. 329, review granted.) The "imposition of these financial obligations has not denied defendant access to the courts" and "their imposition has [not] . . . result[ed] in defendant's incarceration." (*Ibid.*)

10

Accordingly, we conclude that the trial court did not err by imposing the restitution fine, court operations assessment, and court facilities assessment in each case without a finding that defendant has the ability to pay them.

**B.** *Custody Credits*

Defendant contends that he is entitled to an additional 19 days of actual credit, plus appropriate conduct credit, for time he spent in presentence custody in Ohio.

The record reflects that in the instant California cases, defendant was sentenced to jail pursuant to section 1170, subdivision (h) with no further supervision thereafter, and that he was ordered to pay victim restitution, restitution fines, court operations assessments, and court facilities assessments. According to a declaration from defendant's appointed counsel filed in this court on December 11, 2019, defendant has since been released from custody.

We requested supplemental briefing from the parties regarding whether the issue of presentence custody credits is moot. In response, defendant filed a letter in which he "decline[d]" to brief the mootness issue. The Attorney General contends in supplemental briefing that the custody credits issue is moot.

The issue of whether a defendant is entitled to additional presentence custody credits may be moot if the defendant has already served his or her entire sentence and is not subject to any post-release supervision. (*People v. Valencia* (2014) 226 Cal.App.4th 326, 329.) Although a defendant's excess custody credits may be applied to reduce a fine imposed by the trial court, such excess credits may not be applied to reduce victim restitution, a restitution fine, the court operations assessment, or the court facilities assessment. (§ 2900.5, subd. (a); *People v. Morris* (2015) 242 Cal.App.4th 94, 100 [after the 2013 amendment to § 2900.5, subd. (a), excess custody credit may not be applied to a restitution fine]; *People v. Robinson* (2012) 209 Cal.App.4th 401, 403-404 [excess custody credit may not be applied to a court operations or court facilities assessment].) In this case, because defendant was released from custody without any further supervision,

11

and because he was not ordered to pay any amount against which excess presentence custody credits may be applied, the issue of whether he is entitled to such additional credits is moot.

### C. *Prior Prison Term Enhancement*

In supplemental briefing, defendant contends that two prior prison term enhancements (former § 667.5, subd. (b)) must be stricken based on recent legislation. The Attorney General concedes that the new legislation, effective January 1, 2020, applies retroactively to judgments that are not yet final, and that defendant's prior prison term enhancement must be stricken.[3]

As an initial matter, we observe that defendant's sentence includes only one prior prison term enhancement. When defendant was originally sentenced in May 2018, the trial court imposed one prior prison term enhancement in each of defendant's two cases (Nos. B1687703 and C1646362). Defendant subsequently filed a post-sentencing motion in December 2018, contending that the court incorrectly imposed the same enhancement in each case, instead of imposing it only once for both cases. The court granted the motion, striking the enhancement in one of the cases, No. C1646362.[4] The record thus reflects that only one prior prison term enhancement remains in case No. B1687703. We therefore turn to the question of whether this enhancement should be stricken.

---

[3] We note that section 1016.8, which was recently enacted, addresses the issue of plea bargains and subsequent changes in the law. We also note that the issue of whether a certificate of probable cause is required for a defendant to challenge a negotiated sentence based on a subsequent ameliorative, retroactive change in the law is an issue currently pending before the California Supreme Court. (See *People v. Stamps* (2019) 34 Cal.App.5th 117, review granted June 12, 2019, S255843.) Our court has held that a certificate of probable cause is not needed in such circumstances. (*People v. Baldivia* (2018) 28 Cal.App.5th 1071, 1074, 1077-1079 (*Baldivia*).) In the present case, the parties have not raised the issue of whether a certificate of probable cause is required or argued that this court should reconsider *Baldivia*.

[4] We will direct the trial court to prepare an amended abstract of judgment that reflects that the prior prison term enhancement was stricken in case No. C1646362.

12

On October 8, 2019, after the trial court ruled on defendant's post-sentencing motion, the Governor signed Senate Bill No. 136, which amended section 667.5, subdivision (b). (*People v. Lopez* (2019) 42 Cal.App.5th 337, 340 (*Lopez*).) Under the amendment, the one-year enhancement in section 667.5, subdivision (b) applies only if the defendant's prior prison term was "for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code." (Stats. 2019, ch. 590, § 1.)

The amendment to section 667.5, subdivision (b) became effective on January 1, 2020. (*Lopez*, *supra*, 42 Cal.App.5th at p. 341.) The amendment applies retroactively to all defendants whose judgments are not yet final as of that date. (*Lopez*, *supra*, at pp. 341-342; *People v. Jennings* (2019) 42 Cal.App.5th 664, 681-682.) " '[F]or the purpose of determining retroactive application of an amendment to a criminal statute, a judgment is not final until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed. [Citations.]' [Citation.]" (*People v. Vieira* (2005) 35 Cal.4th 264, 306.)

Defendant's case was not final on the effective date of the amendment to section 667.5, subdivision (b). Further, the parties agree that defendant's prior prison term was not for a sexually violent offense under Welfare and Institutions Code section 6600, subdivision (b).[5]

---

[5] Under Welfare and Institutions Code section 6600, subdivision (b), a " '[s]exually violent offense' means the following acts when committed by force, violence, duress, menace, fear of immediate and unlawful bodily injury on the victim or another person, or threatening to retaliate in the future against the victim or any other person, and that are committed on, before, or after the effective date of this article and result in a conviction or a finding of not guilty by reason of insanity, as defined in subdivision (a): a felony violation of Section 261, 262, 264.1, 269, 286, 287, 288, 288.5, or 289 of, or former Section 288a of, the Penal Code, or any felony violation of Section 207, 209, or 220 of the Penal Code, committed with the intent to commit a violation of Section 261, 262, 264.1, 286, 287, 288, or 289 of, or former Section 288a of, the Penal Code."

We will order the section 667.5, subdivision (b) enhancement stricken in case No. B1687703. (See *People v. Wright* (2019) 31 Cal.App.5th 749, 756.)

## IV. DISPOSITION

We order the judgment modified to strike the one-year enhancement under Penal Code section 667.5, subdivision (b) in case No. B1687703. As so modified, the judgment is affirmed.

The trial court is directed to prepare an amended abstract of judgment reflecting that:

(1)     in case No. B1687703, the one-year enhancement under Penal Code section 667.5, subdivision (b) is stricken, and

(2)     in case No. C1646362, the trial court struck the one-year enhancement under Penal Code section 667.5, subdivision (b) and awarded Pruneridge Touchstone Golf $9,019.19 in restitution.

The trial court is directed to send a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

14

_____

BAMATTRE-MANOUKIAN, J.


I CONCUR:




_____

MIHARA, J.




*People v. Petri*
**H045990**

| | |
|---|---|
| Trial Court: | Santa Clara County<br>Superior Court Nos.: B1687703,<br>C1646362 |
| | |
| Trial Judge: | The Honorable Allison M. Danner |
| | |
| Attorney for Defendant and Appellant<br>Jeffrey Petri: | Joy A. Maulitz<br>under appointment by the Court<br>of Appeal for Appellant |
| | |
| Attorneys for Plaintiff and Respondent<br>The People: | Xavier Becerra<br>Attorney General |
| | Lance E. Winters,<br>Chief Assistant Attorney General |
| | Jeffrey M. Laurence,<br>Senior Assistant Attorney General |
| | Eric D. Shade,<br>Supervising Deputy Attorney General |
| | Elizabeth W. Hereford,<br>Deputy Attorney General |

*People v. Petri*
**H045990**

PREMO, Acting P.J., Concurring and Dissenting.

I concur with my colleagues' resolution of Petri's claims with the exception of their rejection of *People v. Dueñas* (2019) 30 Cal.App.5th 1157. I respectfully dissent from their conclusion that *Dueñas* was wrongly decided. At Petri's sentencing, the trial court expressly "assume[d] that [defendant] doesn't have any ability to pay fines and fees" and declined to impose either a $10 fine pursuant to Penal Code section 1202.5 or a booking fee pursuant to Government Code sections 29550, 29550.1 and 29550.2 "based on inability to pay." Accordingly, I would remand the matter to the trial court for a hearing on Petri's ability to pay the remaining fines and fees (*People v. Santos* (2019) 38 Cal.App.5th 923, 933-934) in addition to correcting the other errors identified by the majority.

_____
                    Premo, Acting P.J.

People v. Petri
H045990